Nos. 5037-38-39.

(Court of Appeal, Parish of Orleans.)

## BOARD OF FIRE COMMISSIONERS vs. AHRENS & OTT MANUFACTURING COMPANY (INC.)

E. A. O'Sullivan for plaintiff and appellee.

Howe, Fenner, Spencer & Cocke for appellant.

Solomon Wolf for appellant.

John Dymond, Jr., attorney.

ST. PAUL, J.—Plaintiff purchased from defendant certain fire hose warranted to withstand a pressure of 400 pounds to the square inch, and guaranteed for five years against breakage due to defective or inferior workmanship.

Within a few months every piece of said hose (in all twenty lengths of 50 feet each) burst under a pressure ranging from 45 to 110 pounds.

After the first 14 lengths had burst plaintiff demanded that they be replaced or that the price be reimbursed. Defendant asked for the return of the 14 lengths of hose, took possession thereof, and then submitted the same to a critical examination, which they claim showed the presence of sulphuric acid, sufficient to injure the fabric of the hose and account for the bursting thereof.

When this suit was filed that fact was set up as a defense, together also with the claim that the hose had not been cared for properly, but had been allowed to rot and become mildewed.

It was urged that the hose could not be properly dried after being used unless suspended from towers, which was not done.

There is nothing in this part of the defense. Defendants well knew that the engine houses of this city were not equipped with towers for drying hose, and no such method of drying them was in contemplation of the parties when the contract was made.

Moreover the testimony shows that in point of fact

the method of drying hose actually adopted by the fire forces, was just as effective so far as the hose in question was concerned and **did not** result in any molding or mildewing thereof before it burst.

On the other hand, although warranted capable of withstanding a pressure of 400 pounds, the hose does not appear ever to have been tested to that point or submitted at any time to a pressure exceeding 200 pounds. And if the strength of materials is in any way proportioned to the weight thereof, it is significant that the hose weighed, length for length, but one-half as much as other hose, made of like fabric and warranted to withstand no greater pressure (400 lbs.).

In so far the District Judge found, as he clearly must have found, that as between alleged want of care by the fire department, and inherent weakness in the hose itself, the bursting thereof was attributable to the latter rather than to the former of these two causes, we are inclined to agree with him.

Nor is it any answer to say that no inherent weakness in the hose can be argued from the fact that it burst at 100 lbs. or less, since it is shown to have stood full 200 pounds.

The fact that plaintiff required, and defendant consented to, a warranty that the hose would stand full 400 pounds pressure, although the working pressure thereon rarely rose above or even went as high as 100, shows that both parties realized that working conditions required a factor of safety far beyond the theoretical strength necessary in the hose. Any sudden obstruction to the flow would necessarily jar the column of the water in the hose, and, as in the hydraulic ram, develop momentarily, force and pressure, at the point of obstruction, many times greater that the pressure originally developed from the head or power.

— 465 —

In the absence of evidence tending to show some mechanical or chemical injury inflicted on the hose we would incline to hold that the bursting of the hose under the circumstances of this case was covered by the guarantee given by the defendants.

But if, in point of fact, the fabric of the hose was injured by mechanical or chemical means, defendants are clearly not liable; and it is immaterial how the injury occurred, whether accidentally or otherwise. This was not covered by defendant's guarantee.

It is in respect of this that our learned brother of the District Court appears to have erred. He repeatedly ruled that, unless defendants could show that the alleged injury to the hose, by means of acids, was done by the plaintiff, or someone for whom it was responsible, it could not avail as a defense.

Our views are different, defendants did not guarantee the hose against damage, accidental or malicious; their guarantee covered only defective or inferior workmanship.

And, if the hose was cut or injured, that damage is not covered by their guarantee, whether the injury was or was not due to any fault or negligence on the part of those for whose acts plaintiff was responsible.

Accordingly defendants offered evidence tending to show presence of sulphuric acid on the 14 lengths of hose which had been surrendered to them. This evidence was objected to and in effect excluded by the Judge a qua though physically allowed to go into the record. On the other hand, defendant, in order to overcome certain criticisms which might be leveled at that testimony on account of these 14 lengths of hose having been in their possession, called for the six lengths of hose which had never been surrendered, but still remained in the possession of plaintiff.

They asked permission to submit these six lenghts to

an expert (a chemist) and to examine him touching the result of his findings. But this was objected to and refused by the Court. The Court, likewise, refused to appoint, at defendant's suggestion, a chemist of its own selection to examine and report upon said six lengths of hose.

So far as relates to the testimony which is physically in the record, no difficulty presents itself. When plaintiff made its claim defendant was clearly entitled to investigate the grounds thereof and acquaint the Court with the result of that examination by introducing evidence on that subject. Being in the record and being competent evidence we have but to examine it, which we have done, and were it conclusive, the matter would end there; but we are not prepared to say that we find it entirely so. Hence, we must consider the other estimony tendered by the defendant.

In so far as the District Judge refused to appoint an expert of his own selection, we are without authority to interefere. Defendants were not entitled of right to have such an appointment made; it was a matter entirely within the discretion of the trial Judge. The suggestion was not adopted and there is nothing more to be said. The position assumed by the District Judge was strictly logical; being of opinion that the findings of the expert would throw no light on the case, he, very naturally, declined to appoint one.

But in so far as defendants sought to corroborate and strengthen the other testimony which they had adduced touching the presence of acid in the 14 lengths which had been in their possession, by showing, or attempting to show, the presence of acid on the six lengths which had always remained in plaintiff's possession, the situation was different.

Defendants were entitled to show the fact if they could, and it was error to deny them that right.

— 467 —

The fact that the 14 lengths of hose on which they found acid, had long been in their possession might, perhaps, afford ground for some charge or suspicion that they themselves or those in their employ had placed the acid there. They should have been permitted to remove this ground of suspicion by showing, if they could, the presence of the same acid in the six lengths of hose, which had never left plaintiff's possession.

We are, therefore, of opinion that the case must be remanded for the purpose of having that evidence admitted. In all other respects the case will stand on the evidence now of record, except that plaintiff may rebut the evidence so offered, and show if it can, as suggested in the argument, that the presence of sulphuric acid on the hose, if any, is or may be attributable to the mildewed condition of the hose arising since the bursting thereof, or to something in the process of manufacture.

It is, therefore, ordered that the judgment appealed from be avoided and reversed, and the case remanded to the court a qua, with directions to receive evidence and proceed with the case in accordance with the views hereinabove expressed; plaintiff and appellee to pay the costs of these appeals, and the costs of the District Court to await the final result.